

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00377-CV

———————————————————

ANGELA ORTIZ, Appellant

V.

DAVE CHAPMAN ENTERPRISES, LLC, AND DAVID W. CHAPMAN,
Appellees

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-343385-23

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This case involves a contract (the Contract) to sell a home (the Property) between the buyer, Appellant Angela Ortiz, and the seller, Appellee Dave Chapman Enterprises, LLC (Chapman LLC). After the Contract did not close when Chapman LLC failed to make repairs required by an amendment to the Contract (the Amendment), Ortiz sued Chapman LLC and its owner, Appellee David W. Chapman, for among other things, breach of contract. Following a bench trial, the trial court signed a take-nothing judgment against Ortiz. In its findings of fact and conclusions of law, the trial court found that Ortiz had failed to prove her claims against Appellees, and that in any event, her claims were barred by certain affirmative defenses raised by Chapman LLC. In five issues on appeal, Ortiz argues that she produced factually sufficient evidence to prove her breach-of-contract claim and that the trial court erred by finding that her breach-of-contract claim was barred by the affirmative defenses raised by Chapman LLC. We will hold that Ortiz did not produce factually sufficient evidence to prove her breach-of-contract claim. Because that holding is dispositive of this appeal, we need not reach Ortiz's other issues. Accordingly, we will affirm the trial court's judgment.

## II. BACKGROUND

### A. The Contract and the Amendment

In June 2023, Ortiz and Chapman LLC entered into the Contract. Ortiz was represented in the transaction by her realtor, Brian Wells. Pursuant to the Contract, Chapman LLC agreed to sell the Property to Ortiz for $365,000.[1] The Contract provided that the closing of the sale would be on or before July 5, 2023. The Contract required that Ortiz pay the sales price at closing.

Ten days after signing the Contract, Ortiz and Chapman LLC entered into the Amendment. The Amendment provided, in pertinent part, that Chapman LLC was to complete the following repairs and treatments of the Property at its own expense prior to closing: "Install Copalum[2] pigtail connectors on all plugs, switches, and devices that have aluminum wiring (Buyer to approve of electrician prior to the start of electric work)[.] Licensed Master Electrician to perform all electric work."

### B. The Difficulties Finding a Licensed Master Electrician to Perform the Electric Work and the Failure to Close on the Contract

At trial, Chapman admitted that he had not heard of Copalum before signing the Amendment. He testified that he had assumed that an electrical company would

---

[1]As to the $365,000, the Contract provided that $18,250 was to be paid in cash at closing and $346,750 was to be financed. The Contract also required that $3,650 be delivered to a title company as earnest money and that $250 be delivered to the title company as an option fee. Ortiz later delivered the earnest money and the option fee to the title company.

[2]Copalum is a product used to fix issues with aluminum wiring.

be readily available to install Copalum and that such a company would provide a licensed master electrician to perform the work. Wells had a similar understanding. The parties, however, encountered difficulties finding a licensed master electrician to perform the Copalum work.

Chapman stated that he had called "in excess of 20 or 30" contractors in an attempt to find an electrical company who "both did Copalum and would have a master do the work." Wells indicated to Chapman that he had made "a similar number of calls." Ortiz also made numerous calls to electrical companies in an attempt to find a licensed master electrician to perform the Copalum work. When making the calls, Chapman, Wells, and Ortiz repeatedly ran into the same problem: either the electrical company did not install Copalum or the company used a journeyman, rather than a master, to perform the work.

At trial, Chapman testified that he had found "a couple of different vendors who could do the electrical work" but that Ortiz "didn't approve [of] either one."[3] After Ortiz did not approve the companies provided by Chapman, Wells gave Chapman the names of two other companies—Enoch and Berkey's—that he thought would be able to do the work. Chapman, however, responded by stating that Enoch

---

[3]An email exchanged between Chapman and Wells that was admitted at trial reflects that Chapman had found a company called TLC who would do the work but that Ortiz did not want to use TLC because she did not like its online reviews.

did not perform Copalum work and that Berkey's would not do the requisite work without also replacing the main electrical box.[4]

Ortiz testified that she had found an electrical company out of Austin that would be able to do the Copalum work. When asked about that company, Chapman stated that it had indicated that the work would be performed by a licensed master electrician with the assistance of other employees. Chapman maintained that he did not think that this complied with the Amendment, noting that a licensed master electrician who performs work "[w]ith the assistance of his employees" is not the same thing as a licensed master electrician "performing [all of] the work."

The parties later discussed possibly amending the Contract to account for the difficulties in finding a licensed master electrician to perform the Copalum work, but ultimately, the parties did not reach any agreement regarding a further amendment to the Contract. Eleven days before closing, Wells texted Ortiz to say, "I think it is on you to locate a master electrician that you approve in DFW that can install Copalum crimps with all the work done by only master electricians." He further stated, "After calling around to about 1/2 [a] dozen electrical companies, I am not confident that anyone could locate a company that can meet those 3 requirements." He then listed the three requirements as (1) "Master electrician to do all [the] work"; (2) "[C]opalum crimps"; and (3) "meets your approval."

---

[4]Berkey's later bid to provide certain electrical work on the Property. According to Ortiz, the Berkey's bid did not involve Copalum.

5

That same day, Wells texted Ortiz's mortgage broker to give an update on the transaction. That message stated:

Current update.

Buyer and seller could not come together on amendment. So we are back to [Ortiz] only on contract and closing date of July 5th.

I know you have repeatedly said this date cannot happen.

I don't think buyer can perform.

Because of the repairs/upgrades to the electrical system listed in the [A]mendment[,] I don't think seller can perform.

(We learned this after talking with multiple electricians in the area)[.]

Copalum is a very specialized connector type.

Master electricians don't normally do field installations like this.

Also, buyer to approve of the electrical contractor.

Two days before the scheduled closing, Chapman emailed Wells to say, "We will not be closing on [the Property] on the 5th. [Ortiz] has made it impossible to fulfill the terms of the [C]ontract."

## C. Procedural History

On the day the Contract was supposed to close, Ortiz filed a lawsuit against Chapman LLC. She later amended her petition to add claims against Chapman. In her live pleading, Ortiz brought claims against Chapman LLC for negligent misrepresentation, common-law fraud, statutory fraud, breach of contract, and

6

deceptive trade practices. She brought claims against Chapman for deceptive trade practices. As to her breach-of-contract claim, Ortiz sought specific performance of the Contract and the Amendment, together with "delay damages." Alternatively, she sought actual damages resulting from Chapman LLC's breach. Chapman LLC answered the lawsuit.[5] In its live answer, Chapman LLC raised certain affirmative defenses, including mutual mistake, impossibility of performance, and nonperformance by Ortiz.

The trial court conducted a two-day bench trial on Ortiz's claims. Ortiz represented herself at trial. At the trial's outset, the trial court told Ortiz that she could not get a money judgment and that her evidence regarding damages would be excluded because she had failed to produce documents pertaining to damages during discovery and had failed to disclose the amount of her damages and the method of calculating them.[6] Ortiz and Chapman were the only witnesses to testify at trial.[7]

Following trial, the court signed a take-nothing judgment against Ortiz on her claims against Chapman LLC.[8] The trial court later made findings of fact and

---

[5]No answer filed by Chapman appears in the clerk's record.

[6]Ortiz makes no complaint regarding that ruling on appeal.

[7]The pertinent trial testimony has been recounted above in our discussion of the facts and below in our analysis of Ortiz's breach-of-contract claim. *See* Tex. R. App. P. 47.1.

[8]While the trial court's judgment did not specifically address any claims against Chapman individually, the judgment is final because it followed a conventional trial on

conclusions of law. As pertinent to this appeal, the trial court made the following findings of fact:

> 1. On or about June 2, 2023, Dave Chapman Enterprises, LLC, and Angela Ortiz entered into a real estate contract whereby Dave Chapman Enterprises, LLC, agreed to sell to Ortiz certain real property located at 4616 Waycrest Drive, Haltom City, Texas 76180 for $365,000.

> 2. Pursuant to the contract, the closing was to occur on July 5, 2023.

> 3. The contract gave Ortiz seven days from June 2, 2023, to terminate the contract without penalty and receive back her earnest money deposit and option fee.

> 4. Ortiz deposited the earnest money of $3,650 and $250 option fee with the title company.

> . . . .

> 6. On June 12, 2023, the parties executed an amendment to the contract, which provided for certain repairs to be completed prior to closing.

> 7. Among the repairs and treatments to be performed, Defendants agreed to install Copalum pigtail connectors on all plugs, switches, and devices that have aluminum wiring.

---

the merits. *See N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966) ("When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the [c]ourt intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties."); *see also Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) ("A judgment following a conventional trial on the merits need not dispose of every party and claim for the *Aldridge* presumption of finality to apply."). Moreover, the judgment stated that "[a]ll other requested relief is denied."

8. The amendment stated "[b]uyer to approve of electrician prior to the start of electric work" and a "[l]icensed [m]aster electrician to perform all electric work."

9. Except for the electrical work, Defendants performed all other agreed repairs[,] and documentation of such was provided to Ortiz's real estate agent, Brian Wells.

10. Defendants attempted to locate qualified electrical companies that could: (1) install Copalum; and (2) have all the work performed by a master electrician.

11. Defendants found that it was very difficult to find anyone installing Copalum, let alone having the installation work performed solely by a master electrician.

12. Defendants nonetheless found a few options, which they presented to Ortiz through Brian Wells.

13. Ortiz rejected all of Defendants' options.

14. Brian Wells also attempted to locate an electrical repair company that would install Copalum and have all the work performed by a master electrician, rather than journeymen supervised by a master, but Brian Wells ran into the same problems encountered by Defendants.

. . . .

16. Ortiz also attempted to locate Copalum installers and ran into the same difficulties as Brian Wells and Defendants.

17. Neither Defendants nor Ortiz appreciated when they executed the amendment that locating an electrical provider that installed Copalum and having a master electrician perform all the work was as difficult as it turned out to be.

18. Ortiz was not aware of the difficulty of finding a Copalum installer who would use only a master electrician to do the work before the amendment was signed.

19.    On July 3, 2023, Defendants informed Brian Wells that they would not be closing on July 5, 2023, because Ortiz had made it impossible to fulfill the terms of the amendment.

20.    Ortiz did not tender her purchase price funds to the title company on July 5, 2023, or at any other time.

In its conclusions of law, the trial court concluded that Ortiz's claims were barred because (1) the parties were mutually mistaken with respect to their understanding of how difficult it would be to locate an electrical vendor who could do the electrical work contemplated by the Amendment and who would have a licensed master electrician perform all of the work, (2) her actions rendered Appellees' performance of the electrical work contemplated by the Amendment impossible or impractical to carry out, and (3) Ortiz did not perform her payment obligations under the Contract. The trial court also concluded that Ortiz had failed to prove her claims of breach of contract, negligent misrepresentation, common-law fraud, statutory fraud, and deceptive trade practices. The trial court further concluded that "[b]oth parties should be excused of any further obligations under the [C]ontract, and the earnest money deposit and option fee tendered to the title company should be returned to [Ortiz]." This appeal ensued.

## III. DISCUSSION

In her second issue, Ortiz argues that she produced factually sufficient evidence to prove her breach-of-contract claim and that the trial court thus erred by failing to find that she had proven that claim.

## A. Standard of Review

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When, as here, the party with the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *M.C. v. Pantego Camp Thurman, Inc.*, 543 S.W.3d 439, 445 (Tex. App.—Fort Worth 2018, no pet.).

## B. Applicable Law

To establish a breach of contract, a plaintiff must prove (1) the existence of a valid contract, (2) she performed or tendered performance as contractually required, (3) the defendant breached the contract by failing to perform or tender performance as contractually required, and (4) she sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *Upshaw v. Lacado, LLC*, 650 S.W.3d 61, 77 (Tex. App.—Fort Worth 2021, pet. denied).

Specific performance is an equitable remedy that may be awarded upon a showing of a breach of contract. *Lac v. Nguyen*, No. 02-24-00269-CV, 2025 WL 1349943, at *6 (Tex. App.—Fort Worth May 8, 2025, no pet.) (mem. op.); *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 829 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). It is not a separate cause of action but, rather, it is a remedy that may be used as a substitute for money damages. *Lac*, 2025 WL 1349943, at *6; *Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

As a general rule, a plaintiff seeking specific performance must actually tender performance as a prerequisite to obtaining specific performance. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008); *Baizer v. Shaw*, 727 S.W.3d 554, 574 (Tex. App.—Houston [14th Dist.] 2025, no pet.). But "when a defendant refuses to perform or repudiates a contract, the plaintiff may be excused from actually tendering his or her performance to the repudiating party before filing suit for specific performance." *DiGiuseppe*, 269 S.W.3d at 594; *Baizer*, 727 S.W.3d at 574. In that circumstance, a plaintiff seeking specific performance is excused from tendering performance pre-suit and may simply plead that performance would have been tendered but for the defendant's breach or repudiation. *DiGiuseppe*, 269 S.W.3d at 594; *Baizer*, 727 S.W.3d at 574. This exception is grounded in the notion that actual pre-suit tender of performance should be excused when it would be a useless or futile act. *DiGiuseppe*, 269 S.W.3d at 594; *Baizer*, 727 S.W.3d at 574. However, even when pre-suit tender of performance is excused, a plaintiff must still plead and prove that she is ready, willing,

12

and able to perform at all relevant times before specific performance may be awarded. *DiGiuseppe*, 269 S.W.3d at 595; *Baizer*, 727 S.W.3d at 574.

## C. Analysis

We focus our analysis of Ortiz's breach-of-contract claim on the second element of the claim—whether Ortiz performed or tendered performance as contractually required—because it is dispositive of this appeal. *See* Tex. R. App. P. 47.1. Ortiz argues that she is excused from performing or tendering performance under the Contract because Chapman LLC repudiated[9] the Contract. Assuming that Ortiz is correct that Chapman LLC repudiated the Contract by indicating that it would not close on the Contract, Ortiz still needs to plead and prove that she was ready, willing, and able to perform her own obligations under the Contract. *See DiGiuseppe*, 269 S.W.3d at 595; *Baizer*, 727 S.W.3d at 574.

Here, Ortiz pleaded that she was "ready, willing, and able to tender the full purchase price at closing on July 5, 2023." But more is required of her than merely making that statement in her pleadings; she also needed to *prove* that she was ready, willing, and able to tender the full purchase price. *See DiGiuseppe*, 269 S.W.3d at 600 ("Allowing a plaintiff to simply plead a willingness to tender is no substitute for

---

[9]"A party repudiates an agreement when it makes 'a distinct and unequivocal absolute refusal to perform' without just excuse." *Am. Midstream (Ala. Intrastate), LLC v. Rainbow Energy Mktg. Corp.*, 714 S.W.3d 572, 582 (Tex. 2025) (quoting *Kilgore v. Nw. Tex. Baptist Educ. Soc'y*, 37 S.W. 598, 600 (Tex. 1896)).

requiring [her] to produce evidence showing that [she] was ready, willing, and able to perform [her] contractual obligations at the relevant time.").

In her brief, Ortiz points to the following evidence in an effort to prove that she was ready, willing, and able to perform her contractual obligations: (1) certain emails from the title company and Chapman regarding closing; (2) a closing disclosure statement dated June 30, 2023; (3) a mortgage pre-qualification letter dated January 27, 2023; (4) the July 3, 2023 email from Chapman indicating that Chapman LLC would not be closing because Ortiz had "made it impossible to fulfill the terms of the [C]ontract"; and (5) a portion of a transcript from Wells's deposition. But none of those documents prove that she was ready, willing, and able to perform her contractual obligations.

As to the emails from the title company and Chapman regarding closing, the emails she references were not admitted into evidence at trial.[10] Thus, we cannot consider them.[11] *See Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990) ("Exhibits tendered but not admitted into evidence are not part of the record and cannot be considered on appeal."); *Baukus v. Engle*, No. 14-22-00705-CV, 2025 WL 924570,

---

[10]At trial, Appellees objected to the admission of those emails on hearsay and relevancy grounds, and the trial court sustained the objection. Ortiz does not argue on appeal that the trial court erred by excluding that evidence.

[11]Even if we were to consider those emails, they say nothing with respect to Ortiz's readiness, willingness, and ability to pay the cash portion of the Property's purchase price.

at *14 (Tex. App.—Houston [14th Dist.] Mar. 27, 2025, no pet.) (mem. op.) ("[T]he billing records were not admitted into evidence; therefore, we cannot consider them on appeal.").

As to the closing disclosure statement, it reflects that Ortiz had secured a $292,000 loan relating to her purchase of the Property. Even if that closing disclosure statement is evidence proving that Ortiz had a firm commitment for financing a portion of the purchase price, the closing disclosure statement does not provide any proof that Ortiz was ready, willing, and able to provide the funding for the cash portion of the purchase price.[12] *Cf. Baizer*, 727 S.W.3d at 575 ("When a party relies on third-party financing to be ready, willing, and able to perform under the terms of a contract, the party must show it had a firm commitment for financing at the time performance was required under the contract.").

As to the mortgage pre-qualification letter, it simply states that Ortiz and another listed borrower had been pre-qualified "for a mortgage with a loan amount up to $209,000 and purchase price of $220,000." The letter went on to say that it was contingent on several items and that a "re-verification" needed to take place prior to final approval. Such a letter is not a firm commitment of financing. *See Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 921 (Tex. App.—Amarillo 1972, no writ) ("When a purchaser is depending on a purchase price loan from a party who is [in] no

---

[12]Indeed, the disclosure statement indicates that the "cash to close" was $117,725.96, which included a down payment of $73,000.

15

way bound to furnish the funds, the purchaser is not able to perform so as to be entitled to specific performance."); *see also Baizer*, 727 S.W.3d at 575. Moreover, even if the letter was a firm commitment of financing, it only speaks of a loan of $209,000; it does nothing to show that Ortiz was ready, willing, and able to satisfy the entire $365,000 purchase price of the Property.

As to the email from Chapman indicating that Chapman LLC would not be closing on the Contract, that email says nothing about Ortiz's readiness, willingness, and ability to perform her own contractual obligations. To that end, the email says nothing whatsoever about Ortiz's payment obligations under the Contract.

As to the portion of the transcript from Wells's deposition, we note that when admitting the transcript of Wells's deposition into evidence, the trial court stated that it was "only going to read and consider the highlighted portions" of the deposition that had been designated by the parties. The portion of Wells's deposition cited by Ortiz in her brief was not highlighted, and as such, we will not consider it.[13] *See Arredondo v. Rodriguez*, 198 S.W.3d 236, 239 n.1 (Tex. App.—San Antonio 2006, no pet.) ("We will not consider evidence that the trial court itself did not consider.");

---

[13]Even if we did consider the cited portions, they do not establish that Ortiz was ready, willing, and able to satisfy her contractual obligations at the time of closing. Wells was simply asked whether Ortiz had obtained the necessary funding to close on the Contract on July 4, 2023, and Wells stated, "On July 4th, I believe she did." Wells said that he based that belief on speaking with an individual at the title company, although he did not remember what that person had said to give him that understanding or whether that individual had indicated that Ortiz had actually obtained the necessary funding.

16

*Laas v. Williamson*, 156 S.W.3d 854, 857 (Tex. App.—Beaumont 2005, no pet.) ("Evidence not before the trial court prior to final judgment is beyond the scope of review and may not be considered.").

In short, the evidence cited by Ortiz in her brief demonstrates that, at best, a third party was willing to loan Ortiz $292,000 for her purchase of the Property. But that leaves a deficit of at least $73,000 between the amount of the loan and the $365,000 purchase price of the Property. Ortiz does not explain in her brief how this deficit was to be eliminated, nor does she point us to any testimony or evidence admitted at trial that demonstrates how the remaining purchase price would be satisfied and that she had the readiness, willingness, and ability to satisfy it.

Our recent decision in *Lac v. Nguyen* is instructive. *See* 2025 WL 1349943. In *Lac*, a buyer of real estate sued the seller for breach of contract after the seller tried to back out of the parties' real-estate contract. *Id.* at *2. Following a bench trial, the trial court signed a judgment awarding the buyer specific performance of the contract and ordering the seller to sell the property to the buyer. *Id.* On appeal, the seller argued that the trial court erred by awarding specific performance because the buyer had failed to prove that she was ready, willing, and able to perform the contract. *Id.* at *6. In reviewing the trial evidence on that issue, we noted that the buyer had presented evidence that "she had been approved for financing to cover a $270,000 home purchase—a $202,500 mortgage loan with a down payment of $67,500." *Id.* at *7. We stated that the buyer had also presented evidence at trial that "her aunt had agreed

17

to loan her the money to cover the down payment." *Id.* We further indicated that the buyer's aunt had testified that she was willing and able to loan the buyer the money needed for the down payment, noting that the aunt had said that she had taken out a $100,000 home-equity loan to fund her loan to the buyer for the down payment and that she had received the home-equity-loan proceeds within the requisite timeframe. *Id.* at *7 & n.11. Based on that evidence, we held that the trial court's finding that the buyer was ready, willing, and able to perform the sales contract was supported by both legally and factually sufficient evidence; thus, we held that the trial court did not err by awarding the buyer specific performance. *Id.* at *7.

Here, in contrast to the buyer in *Lac*, Ortiz did not present any evidence at trial to demonstrate that she was ready, willing, and able to pay the Contract's full purchase price. Indeed, during her testimony at trial, Ortiz said nothing with respect to her readiness, willingness, and ability to pay the cash portion of the Property's purchase price. On this record, we cannot say that Ortiz proved that she was ready, willing, and able to pay the Contract's full purchase price.[14] *See Baizer*, 727 S.W.3d at 575

---

[14]While Ortiz's arguments on appeal seem focused on the remedy of specific performance, to the extent that she is claiming that she is entitled to damages, we note that she did not produce evidence of damages at trial. To that end, in a breach-of-contract case involving real estate, the measure of damages is the difference between the contract price and the property's market value at the time of the breach. *Rescue Concepts Inc. v. HouReal Corp.*, 696 S.W.3d 127, 145 (Tex. App.—Houston [1st Dist.] 2022, pet. denied); *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.) (op. on reh'g). The plaintiff bears the burden of establishing the property's market value at the time of the breach. *Rescue Concepts Inc.*, 696 S.W.3d at 146; *Barry*, 309 S.W.3d at 141. Here, Ortiz did not produce any evidence at trial

18

(holding that trial evidence did not conclusively prove that buyer was ready, willing, and able to purchase property when buyer "did not state whether he had the money needed to buy the [p]roperty in cash or cash equivalents" and "did not provide evidence of any such financing, cash, or cash equivalents"); *Hendershot*, 476 S.W.2d at 921 (affirming trial court's finding that appellant was not entitled to specific performance when "[t]he record [was] silent as to appellant's source of, or ability to pay, the $2,000.00 difference between the proposed . . . loan of $34,000.00 and the $36,000.00 purchase price"); *see also Lac*, 2025 WL 1349943, at *7.

After considering and weighing all the pertinent record evidence, we cannot say that the credible evidence supporting the trial court's finding that Ortiz failed to prove her breach-of-contract claim is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *See Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 615; *Dow Chem. Co.*, 46 S.W.3d at 242; *Pool*, 715 S.W.2d at 635.

We overrule Ortiz's second issue.[15]

---

regarding the Property's market value at the time of the alleged breach; thus, she is not entitled to an award of damages. *See Rescue Concepts Inc.*, 696 S.W.3d at 145–46; *Barry*, 309 S.W.3d at 140–41.

[15]On appeal, Ortiz does not address the trial court's findings that she failed to prove her claims of negligent misrepresentation, common-law fraud, statutory fraud, and deceptive trade practices. We need not address her remaining appellate issues, one of which simply provides that the parties agreed for the Copalum work to be performed by a licensed master electrician (an issue that Appellees do not dispute) and the rest that concern the affirmative defenses raised by Chapman LLC to her

## IV. CONCLUSION

Having overruled Ortiz's second issue, which is dispositive of this appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 23, 2026

---

breach-of-contract claim. *See* Tex. R. App. P. 47.1; *David Rafes, Inc. v. Huml*, No. 01-08-00856-CV, 2009 WL 3491043, at *7 n.5 (Tex. App.—Houston [1st Dist.] Oct. 29, 2009, no pet.) (mem. op.) (stating, in appeal following a bench trial, that it need not reach appellant's argument complaining that trial court's take-nothing judgment entered against appellant was against the great weight and preponderance of the evidence because trial court's finding on affirmative defense was supported by legally and factually sufficient evidence); *Bosch v. Smetana 8876 Assocs.*, No. 01-00-01414-CV, 2002 WL 501601, at *4 (Tex. App.—Houston [1st Dist.] Apr. 4, 2002, pet. denied) (not designated for publication) ("Because we have found that summary judgment was properly granted on all appellant's causes of action, we need not address his other issues attacking the affirmative defenses that were alternative grounds for the summary judgment.").